UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIRANDA TAIT** | CIVIL ACTION NO. _____ |
| **VERSUS** | JUDGE: _____ |
| **PRINCIPAL LIFE INSURANCE COMPANY, GROUP LONG TERM DISABILITY INSURANCE PLAN** | MAGISTRATE JUDGE: _____ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

The Complaint of Miranda Tait, a resident of the full age of majority of Lafayette Parish, Louisiana, who respectfully represents:

1.

Pursuant to 28 U.S.C. §1331, Federal Question Jurisdiction is present herein. Pursuant to 29 U.S.C. 1132(e)(2), venue is proper within this judicial district as it is where Petitioner filed a claim for long-term disability benefits, where her claim was denied, and where defendants are subject to the Court's jurisdiction. Furthermore, the records of Petitioner's disability are located within this judicial district.

2.

Defendants enumerated below are justly and truly indebted unto Petitioner for long-term disability benefits, costs of these proceedings, attorney's fees, legal interest thereon from the date of judicial demand until paid, and all such other relief to which Petitioner is entitled at law or in equity:

1. Principal Life Insurance Company (hereinafter "Principal"), as the Plan Administrator of the Group Long Term Disability Insurance Plan for employees of the Advocacy Center; and

2. Group Long Term Disability Insurance Plan (hereinafter "GLTDI Plan"), a long-

term disability insurance plan as defined and governed by ERISA.

3.

The GLTDI Plan provides long-term disability benefits to qualified participants defined as "disabled" for employees and/or former employees of the Advocacy Center. Petitioner is a participant of the GLTDI Plan, Policy Number: GLT1049075, as she was an employee of the Advocacy Center and is totally disabled under the meaning and intent of the Plan and law.

4.

In 2005, Petitioner began working as an attorney for the Advocacy Center. On January 1, 2015, Principal began providing group insurance to Advocacy Center's employees who then qualified as members for the purpose of long-term disability benefits. Petitioner has been a "member" of the GLTDI Plan since January 1, 2015, as she is a citizen of this Country who resides in Lafayette, Louisiana. She was a full-time attorney working over thirty (30) hours per week with her employer, the listed policyholder. She worked at its office and occasionally, was required to travel throughout Louisiana for various court appearances, depositions, and client meetings.

5.

While working for the Advocacy Center in 2018, Petitioner was diagnosed with neurosarcoidosis, an extremely rare, life-threatening neurodegenerative disease which affects Petitioner's central nervous system, causing among other symptoms, her depression and anxiety. Petitioner's neurosarcoidosis significantly limits her cognitive abilities and causes hearing loss, headaches, speech problems, mood swings, anxiety, depression, memory loss, dementia, and vision impairments. These side effects are completely unpredictable and render Petitioner completely incapable of working. Petitioner also suffer from multiple sclerosis.

6.

Continuing throughout 2018, Petitioner's documented neuro-degenerative disease, and accompanying depression and anxiety, significantly worsened.  On December 31, 2018, Petitioner became unable to perform any part of her job, qualifying her for benefits under the GLTDI Plan.  On January 31, 2019, Petitioner timely filed a claim for long-term disability benefits.

7.

Pursuant to the GLTDI Plan, Petitioner is disabled and is eligible for long-term disability benefits.  Part IV, "Benefits", Section A – Benefit Qualification, Article I – Benefit Qualification, provides:

> A Member will qualify for Disability benefits if all of the following apply:
>
> a. The Member is Disabled under the terms of this Group Policy;
> b. The Disability begins while he or she is insured under this Group Policy;
> c. The Disability is not subject to any Limitations listed in this Part IV, Section O.
> d. An Elimination Period of 90 days is completed.
> e. A Benefit Payment Period is established.
> f. The Member is under the Regular and Appropriate Care of a Physician.
> g. The claim requirements listed in this Part IV, Section Q are satisfied.
>
> A Benefit Payment Period will be established on the later of:
> a. the date the Member completes an Elimination Period; or
> b. the date six months before The Principal receives Written proof of the Member's Disability.
>
> . . .

According to Part I, "Definitions", the following pertinent terms are defined as:

> Benefit Payment Period
> > The period of time during which benefits are payable.
>
> Disability; Disabled
> > A Member will be considered Disabled if, solely and directly because of sickness, injury, or pregnancy:
> > > During the Elimination Period and the Own Occupation Period, one of the following applies:
> > > > a. The Member cannot perform the majority of the Substantial and Material Duties of his or her own Occupation.

3

        b. The Member is performing duties of his or her Own Occupation on a Modified Basis or any occupation and is unable to earn more than 80% of his or her Indexed Predisability Earnings.

After completing the Elimination Period and the Own Occupation Period, one of the following applies:
        a. The Member cannot perform the majority of the Substantial and Material Duties of any occupation for which he or she is or may reasonable become qualified based on education, training, or experience and which provides substantially the same capacity as prior to the start of the Disability.

        b. The Member is performing the Substantial and Material Duties of his or her Own Occupation or any occupation on a Modified Basis and is unable to earn more than 80% of his or her Indexed Predisability Earnings.

Elimination Period
> The period of time a Member must be Disabled before benefits begin to accrue. An Elimination Period starts on the date a Member is Disabled and must be satisfied for each period of Disability. A Member who is in the process of satisfying the Elimination Period may recover from the Disability for a period of time and then again become Disabled from the same or a different cause. . . .

Group Policy
> The policy of group insurance issued to the Policyholder by The Principal which describes the benefits and provisions for its Members.

Own Occupation Period
> The first two year(s) of the Benefit Payment Period.

Modified Basis
> . . . if he or she is working to his or her full medical and vocational capacity on a part-time basis.

Policyholder
> The entity to whom this Group Policy is issued (see Title Page).

Regular and Appropriate Care
> A Member will be considered to receiving Regular and Appropriate Care if he or she:
> a.    is evaluated in person by a Physician; and
> b.    receives treatment appropriate for the condition causing the disability; and

  c. undergoes evaluations and treatments that is provided by a Physician whose specialty is appropriate for the condition causing the Disability; and
  d. undergoes evaluations and treatment at a frequency to return the Member to full-time work; and
  e. pursues reasonable treatment options or recommendations to achieve maximum medical improvement. . . .

 Substantial and Material Duties
  The essential tasks generally required by employers from those engaged in a particular occupation that cannot be modified or omitted. If a Member routinely works on average 40 hours or more per week, the Principal will consider the Member able to perform the Substantial and Material Duties of an occupation if he or she is working, or has the capacity to work, 40 hours per week.

Under Part IV, Section O, "Limitations":
 Article I – Limitations
 No benefits will be paid for any Disability that:
 a. results from willful self-injury or self-destruction while sane or insane; or
 b. results from war or act of war; or
 c. results from voluntary participation in an assault, felony, criminal activity, insurrection, or riot; or
 d. is a new Disability that begins after a prior Benefit Payment Period has ended or a claim for benefits has been denied . . .
 e. is a continuation of a Disability for which a Benefit Payment period has ended or a claim for benefits has been denied . . .
 f. is caused by, a complication of, or resulting from a Preexisting Condition . . .

 Article 2 – Preexisting Conditions Exclusion for Initial Coverage
 A. Preexisting Condition is any sickness or injury, including all related conditions and complications, or pregnancy, for which a Member:
  a. received medical treatment, consultation, care, or services; or
  b. was prescribed or took prescription medications; or
  c. had symptoms or conditions which would cause a reasonable prudent person to seek diagnosis, care, or treatment;
 in the twelve month period before he or she became insured under this Group Policy . . .

8.

Petitioner meets all qualifications for benefits. Petitioner timely filed a claim and submitted all necessary claim forms and proof of disability. Since 2018, Petitioner has been under the care, received treatment, and undergone evaluations by her treating physicians in an effort to ameliorate her neurosarcoidosis, and accompanying anxiety and depression. This is in addition to

her existing multiple sclerosis. She pursued reasonable treatment and recommendations from her physicians, including inpatient treatment, prescribed medications, and neurocognitive testing and eleven (11) electro-convulsive (ECT) therapy procedures under general anesthesia at the Baton Rouge General Hospital's surgical ward. Petitioner's benefits are presently payable.

9.

Petitioner's neurosarcoidosis, and accompanying depression and anxiety, was not caused by willful self-injury, self-destruction, war/act of war, or voluntary participation in any criminal activity or riot. Her disease and medical conditions are not a new or continuation of a prior "disability". Petitioner did not become disabled prior to 2015, when she became a Member of the GLTDI Plan.

10.

Petitioner is disabled under Part III, Section "C" of the GLTDI Plan, which provides:

A Member's insurance under this Group Policy will terminate on the earliest of:
a.  the date this Group Policy is terminated . . .

Termination of insurance for any reason described above will not affect a Member's rights to benefits, if any, for a Disability that begins while the Member's insurance is in force under this Group Policy. A member is considered to be continuously Disabled if he or she is Disabled from one condition and, while still Disabled from that condition, incurs another condition that causes Disability.

Petitioner fits within this category as she became disabled before her employer abruptly canceled her policy, effective at midnight on December 31, 2018.

11.

On February 11, 2019, defendant Principal denied Petitioner's long-term disability claim, claiming because she became disabled after her "coverage terminated". This determination was made despite Petitioner's disabled status prior to termination and without performing any actual assessment of her disability.

12.

On August 8, 2019, Petitioner timely appealed the denial of her benefits. Petitioner provided defendant Principal additional documentation proving that she was disabled before the GLTDI Plan allegedly terminated. Attached to Petitioner's appeal were two (2) letters from her treating physicians, Dr. Bridget Bagert and Dr. Joni Orazio. Dr. Bagert stated:

> Ms. Tait is severely disabled by her medical and psychiatric conditions . . . [Ms. Tait] acquired permanent physical disability and her psychiatric conditions have progressively deteriorated. She has experienced recent suicidal ideation and her psychiatrist has recommended inpatient treatment and is considering ECT. Ms. Tait is incapable of working even a low-stress, part-time job because of her combined physical and psychiatric conditions, and this disability is likely to last beyond one year. I fully support her application for disability. . . .

For her part, Dr. Orazio confirmed that Petitioner suffers from generalized anxiety disorder, major depression, post-traumatic stress disorder, and neurosarcoidosis, and opined:

> [Ms. Tait has] [f]unctional limitations include severely impaired executive functioning, severe depression, and significant anxiety. Due to these symptoms she is unable to cognitively complete even simple activities, therefore requiring a great deal of assistance from her husband who is currently curtailing his work to care for her. She cannot fulfill the functional requirements to work in any capacity at this time.
>
> It is my medical opinion that Miranda is fully disabled at this time due to profound depression and anxiety. Miranda is unable to even care for herself in her home at this time. She requires assistance from her husband. She isolates and does not leave the house. She no longer drives. She will begin ECT three times a week in hopes to improve her current functioning and mental health status.

13.

Petitioner further provided defendant Principal her medical records from 2017-2019, including from Dr. Bagert, Dr. Orazio, Dr. Elizabeth McClain, B&L Management, Camelia House Counseling & Aging, The Grove, Ochsner Multiple Sclerosis Center, and University of Texas Southwestern Medical Center. All of Petitioner's records support that she was disabled and

suffering from neurosarcoidosis and secondary depression/anxiety at the time the GLDI Plan terminated.

14.

Petitioner also provided defendant Principal the Social Security determination finding she was "disabled" on December 31, 2018.

15.

On April 9, 2020, defendants arbitrarily and capriciously determined that Petitioner was not eligible for long-term disability benefits and denied her appeal. Defendants purportedly conducted independent evaluations of Petitioner's medical records and disability. Defendants referred Petitioner's case file to Dr. Charles Brock and Dr. Edward Chai, both of whom, upon information and belief, are not even licensed in Louisiana where Petitioner lives and receives medical treatment. On February 7, 2020, and March 3, 2020, Dr. Brock issued an incomplete "report" and "addendum" which failed to consider the entirety of Petitioner's medical records. On February 8, 2020, Dr. Chai also issued an alleged "report" which was similarly incomplete. Neither Dr. Brock nor Dr. Chai examined Petitioner nor interviewed any of her treating physicians. While defendants' evaluators acknowledged that Petitioner suffered from depression, anxiety, and neurosarcoidosis, they arbitrarily reached the conclusion she was not disabled despite the overwhelming medical evidence to the contrary. Defendants claimed Petitioner was not treated for "elevated levels of care" and "neurocognitive" testing. However, defendants were in possession of Petitioner's medical records from Dr. Bagert and Dr. Orazio which demonstrated Petitioner was subjected to neurocognitive testing and electro-conclusive therapy (ECT) to try and treat some of her more debilitating neurological symptoms.

16.

Petitioner exhausted all administrative procedures and remedies under the GLTDI Plan and ERISA.

17.

Pursuant to 29 U.S.C. § 1132(a)(1)(B), Petitioner contends defendants are liable for their arbitrary and capricious denial of her long-term disability benefits. Petitioner seeks recovery of these denied benefits to which she is entitled as a matter of law.

18.

Alternatively, pursuant to 29 U.S.C. § 1109, *et. seq.*, defendant Principal is a fiduciary in connection with the GLTDI Plan as the Plan Administrator and owes Petitioner duties of loyalty, prudence, and fair dealing. Petitioner contends defendant Principal breached its fiduciary duties owed to her by denying her long-term disability benefits. Defendant Principal's actions are inconsistent with the reasonable expectations of Petitioner and are contrary to the established claims practices, legal requirements, and terms of the GLTDI Plan and the law. Pursuant to 29 U.S.C. §1132(a)(3), defendant Principal is liable unto Petitioner for any and all equitable remedies as a result of their breach of fiduciary duties owed to her.

19.

Pursuant to 29 U.S.C. § 1132 *et seq.*, Petitioner contends she is entitled to and desires an award of attorney's fees.

20.

Petitioner is entitled to and desires an award of all such other relief to which she is entitled at law or in equity.

WHEREFORE, Petitioner, Miranda Tait, prays after due proceedings are had, that there be

a Judgment herein in her favor and against defendants, Principal Life Insurance Company and the Group Long Term Disability Insurance Plan, for long-term disability benefits, costs of these proceedings, attorney's fees, legal interest thereon from the date of judicial demand until paid, and all such other relief to which Petitioner is entitled at law or equity.

                RESPECTFULLY SUBMITTED,

                By: _/s Jill L. Craft _____
                Jill L. Craft, T.A., La. Bar Roll No. 20922
                W. Brett Conrad, Jr., La. Bar Roll No. 37639
                Jill L. Craft Attorney at Law, LLC
                330 Government Street
                Baton Rouge, Louisiana 70802
                Telephone: (225) 663-2612
                Fax: (225) 663-2613

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

**MIRANDA TAIT**                            **CIVIL ACTION NO. _____**

**VERSUS**                                   **JUDGE: _____**

**PRINCIPAL LIFE INSURANCE COMPANY,**     **MAGISTRATE JUDGE: _____**
**GROUP LONG TERM DISABILITY INSURANCE**
**PLAN**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **VERIFICATION**

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE,

       BEFORE ME, the undersigned Notary Public personally came and appeared:

                             Miranda Tait

a resident of the full age of majority of Lafayette, Louisiana, who upon being duly sworn did depose and state that she is the Petitioner in the above and foregoing Complaint, she has read same, and all facts and allegations contained therein are true and correct to the best of his knowledge, information, and belief.


_____
                             Miranda Tait

       SWORN TO AND SUBSCRIBED before me, Notary Public, this \_\_\_\_ day of May, 2020.


_____